This case was decided at Fall term 1819, and is reported in 2d. Marsh. 108, Upon the rendition of that opinion, Haggin, counsel for appellee, presented the following petition for a rehearing:
KING vs. HAWKINS HEIRS, &c.
Were not this a case involving the ruin of one very unable to contend with adversity, the court would not be troubled with this petition.
It is admitted that.King, purchased from Wyalft under the advise of Hawkins, who held the title and concealed it. The only difficulty grows out of the statute of fraqds and perjuries.
King had hoped the possession of the property by Wyatt, as his,own being a near neighbor of Hawkins the building a mill and making of other improvements unusual to a tenant, the sale to King, the means taken by Hawkins to promote it, the removal of Hankins and King to a distant part of the state, and the continuance of King s possession, would justify a presumption of a valid (not void) agreement between Hawkins and Wyatt.
But it is respectfully suggested for the consideration of the court, if the statute of frauds and perjuries applies. Its terms only embrace “actions brought to charge any per“son on any contract for the sale of lauds, tenements,” &c. “unless the promise or agreement upon which the action “shall be brought or some memorandum or note thereof “shall be in writing,” &c. The most it would seem that any could contend for, would be that the statute requires all contracts to be reduced to writing and signed, so far as a contract must be proved. But where by the rules of equity the circumstances attending a parol agreement would justify relief before the statute, the same circumstances attending a written agreement with similar stipulations, since the statute, require the same decree. Indeed one Statute has left trusts precisely as before, notwithstanding the statute of England was in view. It is hoped that no adjudication of our commonwealth can be found requiring more, than that so far as a contract is necessary it must be in writing. Roberts in his treatiese on frauds, &c. 135. although he proves that no past performance of a parol contract can justify a decree of specific performance, says it *148 is very different from tbe case of a fraudulent suppression or representation, the jurisdiction of the courts relative to which the legislature did not iutend to invade. Indeed under the equity of the statute the rule should be different. Tbe purchaser may well be expected to obtain a written promise from him with whom he contracts; but no prudence could guard against a case like the present. King made no contract with Hawkins. He shews a written contract with Wyatt, an improvement of tbe property, payment, &c. and demands of Hawkius redress for the concealment. The most ample and appropriate is the Mile. Other principles than the obligation of a positive promise apply. Therefore although, proof of a promise in anv one of the cases found in the books upon this subject, was not attempted; the relief now sought was decreed. Even the infant, and the feme covert, whose positive engagement, if written and signed, and the utmost farthing of tbe value received, would operate nothing, are concluded by the knowledge that their estate was selling, and a failure to communicate their claim. They who cannot contract, are bound by the rules ot equity iu such cases.
Thus Sugden, p. 480 — If a person having right to at) estate, permit or encourage a purchaser to buy it of any other, the purchaser shall bold it, against the person having tbe right, alt ho covert or underage. See also Eq. Ca. Abr. 355, and 356.
A rehearing is very earnestly desired.
JA. HAGGIN.
And now, upon the 11th of December, 1820, Judge Owsuey delivered the following opinion:
We are still of opinion' that the decree pronounced in this cause by the circuit court, must be reversed, and the cause remanded for preparation, as directed by the former opinion of this court.
Upon further consideration, we entertain no doubt but the evidence is totally insufficient to maintain the decree on either of the grounds urged by the counsel of King. There is not only a failure of proof in relation to any written contract by the ancestor of tbe appellee’s selling the land to Wyatt, but there is no evidence even conducing to the proof of a parol contract of sale.
And with respect to the fraud alleged to have been committed by the ancestor of the appellees, we are also of opin-fon, has not been established by the evidence in the cause. *149 It is proven, that some time before King purchased the land of Wyatt, the ancestor of tbe appellees advised Wyatt to sell the land, but there is no evidence of his ever having either advised King to purchase, or in other manner had any conversation with him upon the subject, Upon sucb a state of evidence, therefore, the heirs of Hawkins cannot be decreed to convey the title, if, by proof of the alleged fraud they might be compelled to convey. And whether or not it would have been competent to decree a conveyance from the heirs, if fraud had been proyen, as it is a question about which there remains some doubt, we have not thought proper now to decide, and would not be understood, from any thing contained either in this or the former opinion rendered in this cause, as deciding.